# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE )<br><br>ALAMO AEROBIC AND WASTEWARER<br>PRODUCTS, LTD.<br>DEBTOR<br><br>WILEY W. CLOUD<br>Appellant<br><br>vs.<br><br>JOSE C. RODRIGUEZ<br>TRUSTEE<br>Appellee | Civil Case No. 15-CV-0016-RCL<br><br>Adv. No. 13-5046-CAG |

*IN RE* )

*ALAMO AEROBIC AND WASTEWARER* )
*PRODUCTS, LTD.* )  **Civil Case No. 15-CV-0016-RCL**
*DEBTOR* )

*WILEY W. CLOUD* )
*Appellant* )  **Adv. No. 13-5046-CAG**

*vs.* )

*JOSE C. RODRIGUEZ* )
*TRUSTEE* )
*Appellee* )

### *Memorandum Opinion*

Appellant Wiley W. Cloud seeks review of Bankruptcy Judge Craig A. Gargotta's entry of judgment against him in the amount of $190,083.45 in Bankruptcy Case No. 13-5046. *See* App. Br. 4; Order and Judgment, Dec. 16, 2014, Bankr. Case No. 13-5046, Doc. No. 29. Judge Gargotta found Cloud had received avoidable transfers under Sections 547 and 548 of the Bankruptcy Code, as well as under various provisions of Texas law as permitted by Section 544(b) of the Bankruptcy Code. For the reasons set forth below, this Court affirms the bankruptcy court's determination.

## I. BACKGROUND

### A. Factual Background

This case concerns the 2013 bankruptcy of Alamo Aerobics Wastewater ("Alamo"). Alamo filed its voluntary petition for relief under Chapter 7 on June 7, 2011. Appellee Jose C. Rodriguez ("Trustee") is the acting trustee in the Chapter 7 case. On June 4, 2013, Trustee initiated an

adversarial proceeding in the bankruptcy court seeking the return of funds distributed to Appellant Cloud during 2009 and 2010.

### 1. *Stipulated Facts*

In a Joint Pretrial Statement, the parties stipulated to the following facts:

Appellee Jose C. Rodriguez is the duly appointed and acting trustee in the above-referenced Chapter 7 case. Alamo is a Texas limited partnership formed on or about November 25, 2003. Alamo's ownership structure consists of one general partner, WCRF Management LLC, which holds a 1.0% interest in Alamo, and eight limited partners of varying degrees of ownership, Wiley W. Cloud being the largest at 70.5%. Cloud is also the manager of WCRF, the general partner of Alamo.

Alamo was in the business of selling aerobic septic systems. Alamo had no employees and subcontracted all work. A subcontractor would, using a special mold, create a concrete septic tank. Another subcontractor would affix fittings to the mold of the septic tank. A third subcontractor would install the system at a residence under construction. And yet another subcontractor would service the installed septic system. Alamo had the molds and procured the components, which would be fitted to the cast tank.

Upon filing for bankruptcy, Alamo's scheduled creditors consisted of: (1) American Arbitration Association, $4,000; (2) Jeffrey Ackerman, attorney for National Wastewater Systems, Inc. ("National Wastewater"), $7,000; (3) National Wastewater Systems, Inc., $146,000. All of these claims are related to the delinquent account that Alamo owes National and the related arbitration award.

## 2. The Bankruptcy Court's Findings

Based on the evidence presented, the bankruptcy court found specifically: (1) Alamo had only nominal assets; (2) in the years during which Cloud took distributions, there were limited fixed assets, and the general liabilities were those owed to National Wastewater in the amount of $140,000; (3) at year end in 2009, Alamo had unpaid obligations to National Wastewater that were not reflected on the balance sheet; (4) the assets listed at year end in 2010 were overstated; (5) at year's end 2010 Alamo owed National Wastewater approximately $140,000; (6) Cloud controlled Alamo at all relevant times, and under 11 U.S.C. § 101 was an insider of Alamo; (7) that Cloud knew Alamo was struggling financially and was aware of Alamo's assets and liabilities at the time he took distributions in 2009 and 2010; (8) Cloud knew distributions made to him were not in compliance with applicable law. Bankr. Ct. Ruling 15–18.

From these findings, the bankruptcy court concluded the distributions made to Cloud in 2009 and 2010 were fraudulent. Specifically, the court found they were made with the actual intent to hinder, delay, or defraud a creditor. *Id.* at 18. Moreover, the bankruptcy court found Alamo had received less than reasonably equivalent value in exchange for the distributions made in 2009 and 2010, and Alamo was engaged in a business for which any remaining assets were an unreasonably small sum. *Id.* The bankruptcy court further held that during the relevant period Alamo was insolvent; it incurred debts that would be beyond its ability to pay as the debts matured; the distributions made to Cloud were for the benefit of a creditor; and, such debt was incurred prior to the distributions. *Id.*

With regard to the distributions made in 2010, the bankruptcy court found they were made within one year of the commencement of Cloud's filing for Chapter 7 relief; that Cloud was an Alamo insider, and that the distributions enabled Cloud to receive more than he would have if the

distributions had not been made and had he received payment to the extent provided under Chapter 11 of the United States Code. *Id.* at 19.

The bankruptcy court also found Alamo had not received reasonably equivalent value under Chapter 24 of the Texas Business and Commerce Code in exchange for the distributions made in 2009 and 2010, and such distributions were made with the actual intent to hinder, delay or defraud a creditor. *Id.* at 20. In addition, the bankruptcy court concluded the distributions constituted Alamo's property and were fraudulent under sections 24.005 and 24.006 of the Texas Business and Commerce Code. *Id.* Lastly, the bankruptcy court ruled the distributions in 2009 and 2010 violated Section 153.210 of the Texas Business and Organizations Code. *Id.*

Finally, the bankruptcy court found Cloud was the initial transferee of these funds and was therefore liable pursuant to Section 550 of the Bankruptcy Code.

## II. STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees issued by bankruptcy judges. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's finding of fact under a clear error standard. *In re Amco Ins.*, 444 F.3d 690, 694 (5th Cir. 2006). The challenging party bears the burden of showing the bankruptcy court was clearly erroneous. FED. R. BANKR. P. 8013. A finding of fact is clearly erroneous only when, based on the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re American Housing Foundation*, 785 F.3d 143, 152 (5th Cir. 2015) (citing *Morrison v. W. Builders of Amarillo, Inc.*, 555 F.3d 473, 480 (5th Cir. 2009). By contrast, this Court reviews the bankruptcy court's legal conclusions *de novo*. *In re Amco*, 444 F.3d at 694.

## III. DISCUSSION

In challenging the bankruptcy court's findings under sections 548 and 544, Cloud argues that (1) not all funds distributed to partners are "distributions" under Texas law, and (2) the bankruptcy court erred in applying the Texas Business and Organization Code along with the Texas Business and Commerce Code to Cloud's and Alamo's practices, rather than analyzing those practices under the Texas Construction Trust Fund Act. Apt. Br. 8. Notably, Cloud fails to challenge the bankruptcy court's findings under Section 548 of the Bankruptcy Code. To the extent Cloud addresses Section 548, he characterizes the bankruptcy court's conclusions as "combining § 548 of the Bankruptcy Code with Texas Partnership Distribution prohibitions under the Texas Business and Organizations Code." *Id.* at 26. Cloud misunderstands the relationship between Section 548 and Texas law.

Section 548 provides its own, independent federal basis upon which a trustee may avoid transfers made prior to bankruptcy. *See Matter of Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997). By contrast, under Section 544(b) a "trustee may avoid any transfer of an interest of the debtor in property . . . that is avoidable under applicable law by a creditor holding an unsecure claim." 11 U.S.C. 544(b). The applicable state laws in this instance are the Texas Uniform Fraudulent Transfers Act, Texas Business and Commerce Code § 24.011 *et seq.*, and sections 153.210 and 153.212 of the Texas Business and Organizations Code. The bankruptcy court issued alternative holdings finding for the Trustee on both the Section 548 claim and Section 544 claim. *See* Bankr. Ct. Ruling 18–19. Cloud, nevertheless, limits his challenges on appeal to state law questions. Issues not briefed to this Court on appeal are waived. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.") (citing *Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993)). To the extent Cloud disputes the

bankruptcy court's findings under Section 548, he has waived those objections by failing to properly present them.

Cloud limits the majority of his remaining challenges regarding the bankruptcy court's state law findings to issues regarding the Texas Construction Trust Fund Act ("TCTFA"), Texas Property Code § 162.001 *et seq*. Cloud raises these issues for the first time on appeal. Generally, courts will not consider such matters. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). A party presents an issue at trial if it raises it in either the pleadings, pretrial order, or if the issue is tried by consent. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 331 (5th Cir. 1994). Only in exceptional circumstances, such as avoiding a miscarriage of justice, will courts address novel issues on appeal. *In re Brady*, 501 F.3d 421, 433 (5th Cir. 2007) (citing *Kinash v. Callahan*, 129 F.3d 736, 739 n.10 (5th Cir. 1997). Aside from one brief allusion in his opening statement, nowhere in the proceeding below did Cloud explicitly raise this particular statute.[1] T.T. at 11–12. Because the present circumstances are unexceptional,[2] Cloud has waived these arguments to the extent they rely on or relate to the TCTFA.

Because the Section 548 claim and the state law claims raised under Section 544 each comprise alternative holdings independently adequate to support the bankruptcy court's findings, Cloud has failed to raise sufficient grounds for reversal.[3]

---

[1] In his Reply Brief, Cloud argues the TCTFA was at issue below by pointing to various pieces of testimony eliciting evidence relevant to a determination under the TCTFA. Appl. Rep. Br. 9–12. A stark distinction exists between eliciting evidence potentially relevant to an issue and raising that issue "to such a degree that the trial court may rule on it." *Brown v. Ames*, 201 F.3d 654, 663 (5th Cir. 2000). Nowhere in the papers below is the TCTFA explicitly indicated as being at issue in this case, including the Pleadings, the Parties' Joint Pre-trial Statement as well as Cloud's own Proposed Findings of Fact and Conclusions of Law. The bankruptcy court simply had no way of knowing Cloud was asserting the TCTFA as a defense. Accordingly, Cloud failed to properly raise this issue at the proceeding below.

[2] Cloud, for instance, is not proceeding pro se.

[3] Moreover, because the Section 548 and the state law claims challenged under the TCFTA form independent basis for judgment, this Court need not reach Cloud's challenges to the remainder of the bankruptcy court's findings.

## IV. CONCLUSION

For the foregoing reasons this Court **AFFIRMS** the entry of judgment. A separate order shall issue this date.

United States District Judge

Date_____9/14/15